IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

TRIMAINE LAMONT VICK,       )
                          )
        Petitioner,      )
                          )
                          )     CIV-05-238-HE
v.                        )
                          )
MICHAEL K. ADDISON, Warden,   )
                          )
        Respondent.     )

## REPORT  AND  RECOMMENDATION

Petitioner, a state prisoner appearing *pro se*, has filed this Petition for a Writ of

Habeas Corpus pursuant to 28 U.S.C. §2254.  Petitioner is challenging the convictions for

Murder in the First Degree (Felony Murder) (count one), Conspiracy to Commit a Felony

(count two), Robbery with a Firearm (count four), Assault with a Dangerous Weapon (count

five), Assault with a Dangerous Weapon (count six), and Pointing a Firearm at Another

(count eight) entered against him in the District Court of Oklahoma County, Case No. CF-

2000-5114.  With respect to these convictions, Petitioner is serving sentences of life without

possibility of parole and consecutive sentences of ten years of imprisonment, forty years of

imprisonment, five years of imprisonment, ten years of imprisonment, and ten years of

imprisonment, respectively.  Respondent has responded to the Petition and filed the relevant

portions of the transcript of Petitioner's trial (hereinafter "TR vol.__ at __").  Petitioner has

filed a reply.  The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. §636(b)(1)(B).  For the following reasons, it is recommended that the Petition be denied.

I. Background

Petitioner was charged with seven criminal offenses in Case No. CF-2000-5114, including the homicide of David Kennedy during an armed robbery.[1]  In the first stage of the two-stage trial proceeding in which the prosecution sought the death penalty, Petitioner was found guilty of all seven charges and the jury recommended punishment concerning the charges in counts two, three, four, five, six, and eight.  In the sentencing stage of the trial, the jury recommended that Petitioner be sentenced to a term of imprisonment of life without possibility of parole for the felony murder conviction.  Petitioner appealed the convictions, asserting claims of (1) error in the trial court's removal of a juror for misconduct, (2) double jeopardy with respect to the convictions in count three and count one, (3) double jeopardy with respect to the convictions in counts six and four, (4) error in the admission of testimony by witness Taneka Miller, (5) error in the admission of testimony by police detective Sterling and admission of a pretrial photographic line-up, (6) prosecutorial misconduct, (7) ineffective assistance of trial counsel, and (8) accumulative errors.  The Oklahoma Court of Criminal

---

[1]According to the publicly-available docket sheet in Case No. CF-2000-5114, a co-defendant charged with Petitioner in the case, Lorenzo Frost, entered a plea of guilty to charges against the co-defendant in counts one, two, three, four, and seven prior to Petitioner's trial. <www.oscn.net> The conviction entered against Petitioner for count three in Case No. CF-2000-5114 was reversed and dismissed by the Oklahoma Court of Criminal Appeals in Petitioner's direct appeal.

Appeals ("OCCA") agreed with Petitioner's assertion of a double jeopardy violation in his proposition two and reversed the conviction in count three for Robbery with a Firearm.  The OCCA rejected the remaining claims presented in the appeal and affirmed the remaining convictions and sentences.  Response, Ex. 3 (Vick v. State, No. F-2003-244(Okla. Crim. App. Mar. 31, 2004)).  Petitioner now seeks habeas relief, raising essentially the same grounds raised in his direct appeal except for the double jeopardy ground on which he was successful in his appeal.

II. Standard of Review

Because the OCCA reviewed the merits of each of the claims that Petitioner presents in his Petition, habeas relief may be awarded only if the OCCA's adjudication of the same claims was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d).  Federal courts reviewing habeas claims that have previously been resolved on the merits in state courts must apply a "level of 'deference to the determinations of state courts,' provided those determinations did not conflict with federal law or apply federal law in an unreasonable way." Williams v. Taylor, 529 U.S. 362, 386 (2000)(quoting H.R.Conf.Rep.No. 104-518, p. 111 (1996)).  A state court decision is "contrary to" established Supreme Court precedent if the state court either (1) reached a conclusion opposite to that reached by the Supreme Court on a question of law or (2) decided an issue differently than the Supreme Court has on a set of materially

3

indistinguishable facts. Id. at 405-406. The "state court decision is not 'contrary to ... clearly established Federal law' simply because the court did not cite [Supreme Court] opinions." Mitchell v. Esparza, 540 U.S. 12, 16 (2003)(*per curiam*). "[A] state court need not even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" Id. (quoting Early v. Packer, 537 U.S. 3, 8 (2002)(*per curiam*)). A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court "applies [the Supreme] Court's precedents to the facts in an objectively unreasonable manner." Brown v. Payton, __ U.S. __, 125 S.Ct. 1432, 1439 (2005); Williams, 529 U.S. at 407. See Price v. Vincent, 538 U.S. 634, 640-641 (2003). With respect to the "unreasonable application" requirement, "it is the habeas applicant's burden to show that the state court applied [the Supreme Court case] to the facts of his case in an objectively unreasonable manner," not merely that the state court decision applied the Supreme Court case incorrectly. Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)(*per curiam*). "[W]hether a state court's decision was unreasonable must be assessed in light of the record the [state appellate] court had before it." Holland v. Jackson, 542 U.S. 649, 124 S.Ct. 2736, 2737-2738 (2004)(*per curiam*)(citations omitted). The AEDPA also mandates that factual findings made by a state trial or appellate court are presumptively correct and may be rebutted only by "clear and convincing evidence." 28 U.S.C. §2254(e)(1).

## III. Removal of Juror for Misconduct

In ground one of the Petition, Petitioner contends that a juror was removed by the trial court at the request of the prosecution without clear and convincing evidence of the juror's

misconduct and as a racially-motivated "subterfuge" in violation of <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986).

To the extent that Petitioner contends the trial court's removal of a juror violated state law, Petitioner's claim is not cognizable in this federal habeas proceeding. It is well established that the federal writ of habeas corpus reaches only convictions obtained in violation of the United States Constitution, laws, or treaties. *E.g.*, <u>Mabry v. Johnson</u>, 467 U.S. 504, 507(1984); <u>Pulley v. Harris</u>, 465 U.S. 37, 41(1984); <u>Smith v. Phillips</u>, 455 U.S. 209, 221(1982); <u>Brinlee v. Crisp</u>, 608 F.2d 839, 843(10th Cir. 1979), <u>cert. denied</u>, 444 U.S. 1047(1980). In this regard, the Supreme Court has stated that "[f]ederal courts have no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." <u>Smith</u>, 455 U.S. at 221. Petitioner has not alleged, and the record fails to show, that the state court error of which Petitioner complains "'deprived him of fundamental rights guaranteed by the Constitution of the United States.'" <u>Jackson v. Shanks</u>, 143 F.3d 1313, 1317 (10th Cir.)(quoting <u>Brinlee</u>, 608 F.2d at 843), <u>cert. denied</u>, 525 U.S. 950 (1998).

In Petitioner's direct appeal, the OCCA found that under the appellate court's precedent,

> [j]uror misconduct must be proven by clear and convincing evidence....We find that the record in this case offers clear and convincing evidence of misconduct, which supported the trial court's decision to remove Juror Berkley [sic] for cause. The trial court showed incredible restraint in allowing Berkley [sic] to sit on the jury for as long as he did. Furthermore, we find that the reason for his removal was not based on his race, views on

> the death penalty or any other reason but misconduct by
> sleeping during the proceedings.

Response, Ex. 3, at 6-7 (internal citation omitted).[2]  Petitioner is not entitled to habeas relief with respect to his claim that the trial court abused its discretion under Oklahoma law by removing the juror for misconduct for sleeping during Petitioner's trial.

Petitioner also contends that the prosecutor's request for removal of juror Burkley was based on racially-discriminatory reasons in light of the fact that juror Burkley was African-American, as is Petitioner, and the prosecutor had previously used two of its nine peremptory challenges to remove all but two African-American venire members from the panel. Petitioner relies on Batson in making this claim.  Petitioner did not raise a Batson claim in his direct appeal.  However, the OCCA reached the issue in its decision and therefore assumed that Petitioner had impliedly raised the Batson issue.  In Batson, the Supreme Court held that the Equal Protection Clause prevents the prosecution from using peremptory challenges to strike jurors solely on the basis of their race, or on the assumption that jurors of the same race as the defendant will be unable to render an impartial decision. Batson, 476 U.S. at 89.  Under Batson, a defendant must make a prima facie showing of the purposeful exclusion of jurors "by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose." Id. at 93-94.  "The disposition of a Batson claim is a

---

[2]In the trial transcript, the juror who was removed from the panel was identified as juror Burkley.  In the OCCA's decision, the OCCA referred to this juror at different times as juror Burkley and as juror Berkley.  For consistency, and because the record is not clear concerning the proper spelling of the removed juror's name, the juror will be identified as juror Burkley in this Report and Recommendation.

6

question of fact subjected to the standard enunciated in 28 U.S.C. § 2254(d)(2)." Sallahdin
v. Gibson, 275 F.3d 1211, 1225 (10th Cir. 2002).

The OCCA made extensive factual findings in its decision concerning the issue of
juror Burkley's misconduct. Response, Ex. 3, at 4-7.  The OCCA's finding that Petitioner did
not make a prima facie showing of discrimination in the removal of juror Burkley is
presumed correct.  Petitioner has not overcome this presumption with clear and convincing
evidence of a racially-discriminatory motive for removal of juror Burkley.  The trial record
clearly reflects that juror Burkley was removed for a race-neutral reason. (TR vol. 8, at 3-18).
Accordingly, Petitioner is not entitled to habeas relief concerning his claim in ground one of
the Petition.

IV. Double Jeopardy

In ground two, Petitioner contends that his convictions for Assault with a Dangerous
Weapon (count six) and Robbery with a Firearm (count four) violate the Double Jeopardy
Clause of the Fifth Amendment, violates Article II, Sections 7 and 9 of Oklahoma's
constitution prohibiting multiple punishments for the same offense, and also violates
Oklahoma's statutory double jeopardy provision codified at Okla. Stat. tit. 21, §11(A).  In
his direct appeal, Petitioner contended that Angela Kennedy was the victim alleged in both
count four and count six and that both counts were based on the same act of placing the gun
to Angela Kennedy's head in order to carry out the robbery. Response, Ex. 1, at 31-32.  In
his appellate brief, Petitioner recited the proper test for determining the double jeopardy issue

under <u>Blockburger v. United States</u>, 284 U.S. 299, 304 (1932).[3]  <u>Id.</u> at 32.  Petitioner then

conceded that under the OCCA's interpretation of the <u>Blockburger</u> test, "convictions for both

of these offenses might pass muster because Robbery with a Firearm and Assault with a

Dangerous Weapon do not contain the *exact* same elements." <u>Id.</u> (emphasis in original).

Petitioner argued in his appeal, however, that the double jeopardy "issue can be disposed of

on the basis it cannot survive the prohibition on multiple punishments under Okla. Stat. tit.

21, § 11 (A) (2001)." <u>Id.</u>

The OCCA considered the merits of the Petitioner's double jeopardy claim with

respect to the Petitioner's convictions in counts four and six.  In rejecting Petitioner's double

jeopardy claim as to these convictions, the OCCA made the following factual findings which

are presumed correct:

> The evidence showed that [Petitioner] and Frost entered the apartment and threatened everyone with the gun, demanding money, jewelry and valuables. [Petitioner] grabbed Angela Kennedy's purse from her and threw it to Frost.  David Kennedy grabbed the purse from Frost, but [Petitioner] told him to give it back to Frost, so he did.  David Kennedy then walked over to his wife and placed his hands on her shoulders and said, "This is my wife, she's pregnant, leave her alone." [Petitioner] then walked up to her[,] put the gun to her head, tapped her head with the gun, and said he didn't care if she was pregnant.
> At the point [Petitioner] placed the gun to Angela Kennedy's head, he had completed the robbery of her.  The placing [of] the gun to her head was not the force used for the robbery.

---

[3]In <u>Blockburger</u>, the Supreme Court concluded that  "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." <u>Id.</u>

However, it was a threat used to intimidate the other victims and keep them from resisting. The robbery had been completed. Angela Kennedy's purse had been taken from her person with the use of a firearm. Therefore, we find that the two crimes were separate and distinct.

Response, Ex. 3, at 8 (citation omitted). In connection with the conclusion reached by the OCCA on Petitioner's double jeopardy claim, the OCCA referred to its previous decision in Davis v. State, 993 P.2d 124 (Okla. Crim. App. 1999), in which the OCCA reviewed the merits of a double jeopardy claim based on alleged convictions for multiple punishments under both the Blockburger standard and Oklahoma's statutory double jeopardy provision codified at Okla. Stat. tit. 21, §11(A). Davis, 993 P.2d at 125-127. The pages referenced in Petitioner's direct appeal indicate that the OCCA considered Petitioner's double jeopardy claim as raising only an issue under Okla. Stat. tit. 21, §11(A), consistent with Petitioner's argument in his direct appeal that his convictions in counts four and six violated the state statutory double jeopardy provision but not the constitutional standard enunciated in Blockburger. Nevertheless, even assuming that Petitioner raised and the OCCA reached the constitutional issue, the OCCA's decision is not contrary to, or an unreasonable application of, the clearly-established Blockburger standard. The Blockburger test is satisfied if the state statutes contain dissimilar elements. In this case, Oklahoma's Robbery with a Firearms statute requires an element, the robbery or attempted robbery of an individual, that is not contained in the statute for Assault and Battery with a Dangerous Weapon. Compare Okla. Stat. tit. 21, § 801 (Robbery with a Firearm) with Okla. Stat. tit. 21, § 645 (Assault and Battery with a Dangerous Weapon). The fact that a portion of the evidence at Petitioner's

trial was presented to satisfy the prosecution's burden of proof concerning both of these crimes, and hence the evidence overlapped, does not amount to a violation of the Fifth Amendment's double jeopardy prohibition.  "If each [offense] requires proof of a fact that the other does not, the Blockburger test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes." Ianelli v. United States, 420 U.S. 770, 785 n. 17 (1975).  Petitioner's claim that his convictions in counts four and six violate Oklahoma's statutory double jeopardy provision, Okla. Stat. tit. 21, §11, raises only an issue of state law. "In assessing whether a state legislature intended to prescribe cumulative punishments for a single criminal incident, [courts] are bound by a state court's determination of the legislature's intent." Cummings v. Evans, 161 F.3d 610, 615 (10th Cir. 1998), cert. denied, 526 U.S. 1052 (1999).   Accordingly, Petitioner is not entitled to habeas relief with respect to his double jeopardy claim.

V. Admission of Prejudicial Evidence of "Other Crimes"

    In ground three, Petitioner asserts that he was denied a fair trial in violation of the Due Process Clause and Oklahoma's Constitution as a result of the trial court's admission of prejudicial evidence of "other crimes." Petitioner refers to the testimony of Taneka Miller during his trial.  Petitioner raised this same claim in his direct appeal, and the OCCA made the following presumptively correct factual findings regarding this claim:

> Miller testified that she knew [Petitioner]. She testified that she had a conversation with him while they were being transported from the county jail to court on a robbery case in which they were co-defendants.  Miller specifically stated:

> Well, when I saw him I knew he was 17 and I was
> 18, so he had no business being at the County Jail.
> And I was coming to court on a robbery case that
> he was my co-defendant.
>
> Defense counsel interposed an objection and interrupted the
> testimony at that point.  The trial court sustained the objection,
> but refused to grant a mistrial.  The trial court did admonish the
> jury to disregard the statement by the witness.  This admonition
> cured any error.

Response, Ex. 3, at 8-9 (citation omitted).  Petitioner is not entitled to federal habeas relief concerning this claim of trial court error unless the error "'deprived him of fundamental rights guaranteed by the Constitution of the United States.'" Jackson v. Shanks, 143 F.3d 1313, 1317(10th Cir.)(quoting Brinlee, 608 F.2d at 843), cert. denied, 525 U.S. 950 (1998). Miller's testimony presented during Petitioner's week-long trial included one brief reference to another criminal proceeding involving Petitioner. In light of the overwhelming evidence of Petitioner's guilt presented at his jury trial and the trial court's admonishment to the jury, the admission of this testimony by Miller did not render Petitioner's trial so unfair as to constitute a denial of due process.  In the absence of any showing that the OCCA's rejection of this claim was contrary to, or an unreasonable application of, clearly-established Supreme Court jurisprudence, Petitioner is not entitled to habeas relief.

VI. Improper "Bolstering" of a Witness's Testimony

In ground four, Petitioner contends that the trial court denied him a fair trial by admitting evidence which improperly "bolster[ed]" the testimony of prosecution witness Angela Kennedy regarding her pretrial identification of Petitioner.  Petitioner first refers to the cross-examination questioning of Detective Sterling by the prosecutor during Petitioner's

case in chief regarding Angela Kennedy's pretrial identification of Petitioner through use of a photographic line-up.   Petitioner also refers to the prosecutor's reference to the photographic line-up and Angela Kennedy's pretrial identification of Petitioner during closing statements.

In addressing this issue in Petitioner's direct appeal, the OCCA found that

> Detective Teresa Sterling testified that [Angela] Kennedy identified [Petitioner] from a photographic line-up during cross-examination by the prosecutor in [Petitioner's] case in chief. [Petitioner] did not object to this testimony.   However, the photographic line-up was introduced as evidence over the objection of defense counsel. [Petitioner] also complains that the prosecutor mentioned the pre-trial identification during closing argument.   There was no objection to these comments. [Petitioner] claims that this testimony and evidence amounts to improper bolstering. [Petitioner] has waived all but plain error concerning Sterling's testimony and the prosecutor's arguments.....Angela Kennedy identified [Petitioner] as the one who pointed the gun to her head during the trial.   She also testified, in response to questioning by defense counsel, that she picked [Petitioner] out from photographs shown to her by Detective Sterling.   The additional testimony by Sterling and comments by the prosecutor did not amount to plain error.

Response, Ex. 3, at 9-10 (internal citation omitted).   Petitioner relied solely on state court precedent in asserting this claim in his direct appeal, and in this Court Petitioner has raised only an issue of state court error in the admission of evidence during his trial.   With respect to this claim, Petitioner is not entitled to habeas relief unless he shows that the admission of the testimony and the prosecutor's reference to the testimony "deprived him of fundamental rights guaranteed by the Constitution of the United States." Jackson, 143 F.3d at 1317.

The trial record reflects that Angela Kennedy testified for the prosecution that Petitioner was the man with the gun who entered the apartment, pointed the gun at the four adult occupants in the apartment, robbed her of her purse, and fired the shots that killed her husband, David Kennedy.  TR vol. 4, at 184-190.  On cross-examination of Detective Sterling by the defense, Detective Sterling was questioned concerning Angela Kennedy's pretrial identification of Petitioner using a photographic line-up. TR vol. 4, at 209-210. The prosecutor first questioned Detective Sterling  about Ms. Kennedy's pretrial identification of Petitioner during cross-examination of Detective Sterling, who had been called as a witness for the defense.  Ms. Kennedy's testimony was consistent with Detective Sterling's testimony that Kennedy identified Petitioner in a pretrial photographic line-up presented to her by Detective Sterling.  Because the defense inserted the issue of the pretrial photographic line-up into the trial, Petitioner's trial was not rendered fundamentally unfair by the prosecutor's questioning of Detective Sterling concerning the pretrial identification of Petitioner by Kennedy using the photographic line-up or by the prosecutor's reference to the pretrial identification of Petitioner by Kennedy during closing statements.

Petitioner also contends that the trial court erred in admitting into evidence the photographic line-up employed in witness Angela Kennedy's pretrial identification of Petitioner.   The trial record reflects that the prosecutor requested admission of the photographic line-up and the defense objected on the ground that the line-up was improper bolstering of Kennedy's in-court identification of Petitioner. TR vol. 8, at 24.  The trial court ruled that the photographic line-up was admissible because the OCCA had previously ruled

13

that photographic line-ups are admissible although the trial court did not state on the record

what precedent the trial court was following in reaching this decision.  Id.

The OCCA concluded, based on its previous decision in Black v. State, 871 P.2d 35,

40 (Okla. Crim. App. 1994), that

> Angela Kennedy's identification of [Petitioner] at trial was
> solid.  During the crime, she had ample time to view
> [Petitioner]. He was within arms reach of her when he placed
> the gun to her head.  He also took her purse from her and was in
> her view for a substantial amount of time.  Any error in the
> introduction of the photographic line-up in this case was
> harmless beyond a reasonable doubt.

Response, Ex. 3, at 10.  Petitioner does not allege that the pretrial photographic line-up

employed in the identification of Petitioner by witness Kennedy was impermissibly

suggestive.  Petitioner merely challenges the admission of the pretrial photographic line-up

at trial on the ground that the evidence somehow impermissibly "bolster[ed]" the in-court

identification of Petitioner by witness Kennedy.   The Supreme Court has held that

"convictions based on eye-witness identification at trial following a pretrial identification by

photograph will be set aside on that ground only if the photographic identification procedure

was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable

misidentification." Simmons v. United States, 390 U.S. 377, 384 (1968).  The admission of

evidence of a pretrial identification "without more does not violate due process." Neil v.

Biggers, 409 U.S. 188, 198 (1972).  Petitioner has not shown that his trial was rendered

fundamentally unfair as a result of the admission into evidence of the photographic line-up

used in the pretrial identification of him by witness Kennedy.  The OCCA's rejection of this

14

claim was not contrary to, or an unreasonable application of, clearly-established federal law as determined by the Supreme Court, and Petitioner is not entitled to habeas relief concerning this claim.

VII. Prosecutorial Misconduct

In ground five of the Petition, Petitioner contends that prosecutorial misconduct deprived him of a constitutionally fair trial. Petitioner bases his misconduct claim on (1) the opening statement by the prosecutor in which Petitioner alleges that "the prosecutor attempted to distract and inflame the jury by improperly appealing to the jury's sympathy for the victim and, particularly, his daughter who was born shortly after his death," (2) the prosecutor's "recurrent theme" in evoking testimony by the victims concerning the "evil nature" of Petitioner's eyes during the crimes and the prosecutor's references to these witnesses' prejudicial characterizations of Petitioner during closing statements, including the prosecutor's twisting of Petitioner's nickname of "Ice" into the "Ice cold killer," (3) the prosecutor's questioning of victim Nathan Moore concerning Moore's speculation that he would not be alive "had there been a bullet in that gun," (4) the prosecutor's repeated and improper questioning of defense witnesses that disparaged the integrity of defense counsel by insinuating that the witnesses were paid for their testimony or made improper deals in exchange for their testimony at trial, (5) the prosecutor's improper accusation that defense counsel created a "smoke screen defense," (6) the prosecutor's improper comment during the first stage closing statements on the defense's failure to produce evidence, (7) the prosecutor's improper arguments intended to "evoke[ ] societal alarm," and, lastly, (8) the

prosecutor's improper comment during his questioning of police Detective Ricketts on Petitioner's right to remain silent.

The standard governing Petitioner's claim of prosecutorial misconduct is well-established.  "In determining whether a petitioner is entitled to federal habeas relief for prosecutorial misconduct, it must be determined whether there was a violation of the criminal defendant's federal constitutional rights which so infected the trial with unfairness as to make the resulting conviction a denial of due process." Fero v. Kerby, 39 F.3d 1462, 1473 (10th Cir. 1994)(citing Donnelly v. DeChristoforo, 416 U.S. 637, 642 (1974)), cert. denied, 515 U.S. 1122 (1995).  Accord, Hoxsie v. Kerby, 108 F.3d 1239, 1243 (10th Cir.), cert. denied, 522 U.S. 844 (1997).

Petitioner raised the same claim of prosecutorial misconduct in his direct appeal.  The OCCA applied the correct standard in thoroughly evaluating each of the alleged instances of prosecutorial misconduct. Response, Ex. 3, at 10-18.   The OCCA found that the prosecutor's opening statement reference to the events that occurred on the date of the offenses, TR vol. 3, at 97-98, was a "vivid description of what the prosecutor expected the evidence to show, and the statement was proven to be true by the evidence." Response, Ex. 3, at 11-12.  With respect to Petitioner's second claim of misconduct based on questioning by the prosecutor of the victims concerning their identification of Petitioner, the OCCA found that "[t]hese were witnesses' perceptions of [Petitioner] that aided in their identification.   The testimony cannot be called prosecutorial misconduct." Id. at 12. However, with respect to the prosecutor's references during first stage closing statements to

the victim's identifications and the prosecutor's reference to Petitioner as an "Ice cold killer," the OCCA found that Petitioner did not object to the comments and reviewed the alleged misconduct for plain error only.  The appellate court found that no plain error was shown because the "prosecutor was merely commenting on the witnesses' testimony in how they identified [Petitioner] and remembered what he looked like." Id.  The OCCA further found that the prosecutor's "comment of 'Ice cold killer' was improper name calling, but it did not rise to the level of plain error in this case." Id. (citing Malicoat v. State, 992 P.2d 383, 401 (Okla. Crim. App. 2000)).

Concerning Petitioner's claim that the prosecutor elicited improper speculation by asking victim Nathan Moore if he believed he would not be alive if Petitioner had not fired all of his bullets before he pulled the trigger in the direction of Moore's head, the OCCA found that the testimony and references to the testimony of Moore during closing statements was not misconduct because the "testimony and the argument were properly based on the evidence....[Petitioner] held the gun to Moore's head and pulled the trigger, but all of the bullets had been expended.  Moore's belief that he would have died was reasonable." Id. at 12-13.  With respect to the allegation that the prosecutor committed misconduct by disparaging defense counsel by insinuating that counsel paid or made deals in exchange for defense testimony, the OCCA found that

> [o]ne witness testified that defense counsel interviewed him and
> he asked defense counsel about his own case.  He testified that
> defense counsel said, 'If you help me, I can help you.'  The
> prosecutor asked if he took 'that to mean that she was going to
> help you out on your case in exchange for telling a story?'  The

witness replied, 'no.' The prosecutor asked another witness if he had received any money for the three or four occasions that he went to counsel's office to be interviewed. The prosecutor suggested that a defense investigator had instructed one witness about how to testify and what to say. The witness denied the suggestion. The prosecutor asked another witness about receiving rides to counsel's office, which the witness denied. The prosecutor also asked this witness if she had been bragging in the neighborhood about getting paid $40 or $50 for every time she talked to defense counsel. The witness denied saying this. The prosecutor asked if she had told friends in the neighborhood that she was going to be coming into some big money if she helped [Petitioner] out. The witness also denied saying this. Most of these questions were met with objections by defense counsel, but the objections were overruled.

Response, Ex. 3, at 13-14. The OCCA concluded that no misconduct was shown because these questions "were obviously based on a good faith belief that witnesses had bragged about being paid by defense counsel. Furthermore, the statement by the first witness could be construed as a favor in exchange for a favor. Counsel has a right to explore a witness's bias." Id. at 14. As to Petitioner's claim that the prosecutor made a "smoke screen" argument, the OCCA found that the comment represented only "an attempt to urge the jury to use their common sense and follow the evidence" and therefore the comment could not be considered misconduct. With respect to Petitioner's claim that during closing statements the prosecutor improperly commented on defense counsel's failure to produce evidence, the OCCA found that the prosecutor's comments were proper comments in response to defense counsel's statements during opening and closing statements. Id. at 15-16. As to Petitioner's assertion that the prosecutor attempted to invoke societal alarm during his closing statement, the OCCA found that the comments were directed at Petitioner and not on the effect of

crimes on society in general and represented only the prosecutor's request for severe sentences on the non-capital offenses. <u>Id.</u> at 16.

A copious review of the trial transcript in this case reveals compelling evidence of Petitioner's guilt. Witnesses testified that on the same evening that the robbery and homicide occurred they saw Petitioner brandishing a pistol and talking with his co-defendant about robbing someone. Petitioner was identified at trial by the three armed robbery victims as the individual who robbed them and who shot and killed David Kennedy, and the victims' descriptions of the events that occurred on the night of the robbery and homicide were consistent in every significant respect. The expert evidence concerning the location of the bullets retrieved from the apartment and the homicide victim and the cause of death was consistent with the robbery victims' testimony concerning the manner in which Petitioner repeatedly shot the victim, David Kennedy, at close range. In light of the overwhelming evidence of Petitioner's guilt presented at his trial, none of these instances of alleged prosecutorial misconduct so infected his trial with unfairness as to render his convictions a denial of due process.

Concerning Petitioner's last claim of prosecutorial misconduct, the OCCA found that the prosecutor's

> questioning concerned the fact that [Petitioner] told the detective that he wanted to talk but his mother wanted him to talk with an attorney first. During the [Petitioner's] case, Detective Ricketts stated that [Petitioner] told him that his mother told him not to say anything to the police. On cross-examination the prosecutor asked if anyone had contacted him to tell him that [Petitioner]

> was ready to talk, even after he hired an attorney.  The detective
> replied, "Especially after he hired an attorney."

Response, Ex. 3, at 17.  The OCCA found that the prosecutor's "comment was a comment

on the right to silence as well as the right to consult an attorney before talking to the police

and may have been intended to show that [Petitioner] had something to hide."  Id.

Nevertheless, the OCCA concluded that the trial court properly sustained defense counsel's

objection to this testimony and that the error was cured by the trial court's action. Id.

The OCCA did not rely on Supreme Court authority in assessing the harmlessness of

the error.  Therefore, this Court must consider whether the comments by the prosecutor had

"substantial and injurious effect or influence in determining the jury's verdict. Brecht v.

Abrahamson, 507 U.S. 619, 637 (1993).  In assessing harmless error, the Tenth Circuit has

identified the following factors as relevant to the issue: "(1) the prosecutor's use of the post-

arrest silence; (2) whether the defense or prosecution pursued this line of questioning; (3) the

amount of evidence indicating guilt; (4) the frequency and force of the reference; and (5) if

the defense requested a mistrial or curative instructions." Sallahdin, 275 F.3d at 1230-1231.

In Sallahdin, the court noted that the first and third of these inquiries are the most important.

Id. at 1231.  Employing the factual findings of the OCCA, which are presumed correct under

28 U.S.C. §2254(e)(1), the prosecutor only referred to Petitioner's invocation of his right to

silence and counsel during the above-described questioning of Detective Ricketts, the

evidence of Petitioner's guilt was overwhelming, the trial court sustained the objection, and

the prosecution did not use this testimony to establish Petitioner's guilt or refer to it again

after the defense counsel's objection was sustained.  Under these circumstances, the error

was harmless.  Accordingly, Petitioner is not entitled to habeas relief concerning his claim

of prosecutorial misconduct.

VIII. <u>Ineffective Assistance of Trial Counsel</u>

In ground six, Petitioner contends that he was denied his Sixth Amendment right to

the effective assistance of defense counsel.  In support of this claim, Petitioner contends that

his defense counsel failed to adequately impeach "two key witnesses, Chana Martin and

Marquitta Lowery" with their prior inconsistent statements.  Petitioner does not refer to

specific portions of the trial transcript to support this allegation.  Petitioner merely alleges

that "it is a reasonable probability the outcome of the trial would have been different had the

jury heard evidence that eyewitness Chana Carter identified Mr. Frost, not Petitioner, as the

shooter immediately after the crime occurred." Petition, at 18-19.

Petitioner raised this same claim in his direct appeal.  The OCCA found that during

the trial the following testimony was elicited from prosecution witnesses Marquitta Lowery

and Chana Carter Martin:

> Lowery testified that during a fight between she and Martin after
> the robbery, Martin said that "your brother [Frost] and them"
> killed David Kennedy.  On cross-examination, defense counsel
> asked Lowery if Martin said, "Your brother killed my brother."
> Lowery testified, "no." Martin testified that she knew Frost.  She
> was asked if she told Lowery that, "Your brother killed my
> brother." She said she didn't.  On cross-examination, she was
> asked if she told Ritchie Strickland that Lowery's brother killed
> Kennedy.  She testified that she did not remember talking to
> Strickland.

Response, Ex. 3, at 18.  These factual findings are presumptively correct, and Petitioner has not overcome the presumption with clear and convincing evidence.  28 U.S.C. §2254(e)(1).

Evaluation of the effectiveness of Petitioner's trial counsel's assistance "requires a two-part inquiry.  'In order to prevail, the defendant must show both that counsel's representation fell below an objective standard of reasonableness, and that there exists a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Williamson v. Ward, 110 F.3d 1508, 1514 (10th Cir. 1997)(quoting Kimmelman v. Morrison, 477 U.S. 365, 375 (1986)).  Counsel's performance is evaluated from the attorney's perspective at the time of the assistance, considered in light of all the circumstances prevailing at that time, and indulging a strong presumption that counsel's conduct fell within the "wide range of reasonable professional assistance." Strickland v. Washington, 466 U.S. 668, 689 (1984).

The OCCA applied the governing Strickland standard in evaluating Petitioner's Sixth Amendment claim.  The OCCA concluded that because of the overwhelming evidence of Petitioner's guilt presented at his trial, Petitioner could not show prejudice under the second part of the Strickland two-part test as a result of the allegedly deficient impeachment of the two prosecution witnesses by defense counsel.  Id. at 19-20.  The OCCA pointed out that there were three eyewitnesses who testified Petitioner was the one with the gun, that two of the three witnesses who positively identified Petitioner as the one holding the gun actually had the pistol pointed directly at their heads and that another witness testified that Petitioner told her that "they're trying to stick him with Murder I but he's going to put it on the other

nigger." Response, Ex. 3, at 19-20; TR vol. 6, at 176.  The OCCA's decision with respect to this claim is not contrary to, or an unreasonable application of, the prevailing <u>Strickland</u> standard.  Petitioner is consequently not entitled to habeas relief concerning his Sixth Amendment claim.

## IX. <u>Cumulative Errors</u>

In his last ground for relief, Petitioner contends that the accumulation of errors occurring during his trial denied him a fair trial such that his due process rights were violated under the Constitution.  The OCCA rejected this claim in Petitioner's direct appeal.  Outside of the context of "materiality in terms of the cumulative effect of suppression" of items of evidence in a criminal proceeding, <u>Kyles v. Whitley</u>, 514 U.S. 419, 437 (1995), the Supreme Court has never recognized a separate constitutional claim for cumulative errors on federal habeas review. Instead, trial errors occurring during the presentation of evidence to the jury are assessed in the context of other evidence presented during the trial to determine the effect of the error(s) upon the jury. <u>Arizona v. Fulminante</u>, 499 U.S. 279, 307-308 (1991).  Under the prevailing standard for habeas review of such trial errors, a trial error "requires reversal only if it 'had substantial and injurious effect or influence in determining the jury's verdict.'" <u>Brecht</u>, 507 U.S. at 631 (quoting <u>Kotteakos v. United States</u>, 328 U.S. 750, 776 (1946)).  The only constitutional error found in Petitioner's trial has previously been considered and found not to have had a substantial and injurious effect or influence in determining the jury's verdict.  "Cumulative error analysis applies where there are two or more actual errors..." <u>Moore v. Reynolds</u>, 153 F.3d 1086, 1113 (10th Cir. 1998), <u>cert. denied</u>, 526 U.S. 1025

(1999).  Because there were not two or more constitutional errors that occurred at Petitioner's trial, cumulative error analysis is not required.  Therefore, the OCCA's decision was not contrary to, or an unreasonable application of, clearly-established federal law as determined by the Supreme Court, and Petitioner is not entitled to habeas relief with respect to this cumulative error claim.

RECOMMENDATION

Based on the foregoing findings, it is recommended that the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. §2254 be DENIED.  Petitioner is advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court by August 3, 2005, in accordance with 28 U.S.C. §636 and LCvR 72.1.  The Petitioner is further advised that failure to make timely objection to this Report and Recommendation waives his right to appellate review of both factual and legal issues contained herein.  Moore v. United States of America, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED this   14th   day of   July  , 2005.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE